### In re HARTSDALE ASSOCIATES, Debtor.

**James BLOOR, as Reorganization Trustee of Investors Funding Corporation of New York and IFC Collateral Corporation, Appellant,**

v.

**HARTSDALE ASSOCIATES, the Mastan Company Incorporated and Connecticut General Life Insurance Company, Appellees.**

### No. 76 B 438.

United States District Court, S. D. New York.

June 2, 1978.

Weil, Gotshal & Manges, New York City, for appellant; Alan B. Miller, William J. Rochelle, III, New York City, of counsel.

McCarthy, Fingar, Donovan, Glatthaar, Drazen & Smith, White Plains, N. Y., for appellee Connecticut General Life Ins. Co.; Martin Drazen, White Plains, N. Y., of counsel.

LASKER, District Judge.

James Bloor, reorganization trustee of Investors Funding Corporation of New York and IFC Collateral Corporation (collectively IFC), holds a mortgage on property of Hartsdale Associates (the debtor) junior to that of Connecticut General Life Insurance Company. Bloor appeals from so much of a "Decision and Recommendations With Respect To Valuation And Classification Of Claims" of Bankruptcy Judge Harold Schwartzberg, dated June 16, 1977, as determined that Connecticut General was entitled to be paid by the debtor's estate interest on its mortgage at the rate of 8½% per annum from August 1, 1975, the due date of the Connecticut General mortgage. Bloor contends that the rate of interest

payable to Connecticut General should be 6% per annum or less.[1]

The proceedings arise under Chapter XII of the Bankruptcy Act. The facts are fully described in the papers on appeal and in the memoranda of the appellant and appellee. The parties agree that the disposition of the issue is governed by the law of the State of New York. The question for determination is whether interest is to be calculated pursuant to the provisions of §§ 5001–4 inclusive of the C.P.L.R. or the provisions of General Obligations Law, § 5–501. Under the former, the rate of interest would be 6%. Under the latter, the rate is that prescribed by the Banking Board of the State of New York. Judge Schwartzberg found that § 5–501 of the General Obligations Law controlled. We agree with his analysis and affirm his decision.

The relevant provisions of § 5001, C.P. L.R. read:

"§ 5001. Interest to verdict, report or decision

(a) Actions in which recoverable. Interest shall be recovered upon a sum awarded because of a breach of performance of a contract, or because of an act or omission depriving or otherwise interfering with title to, or possession or enjoyment of, property, except that in an action of an equitable nature, interest and the rate and date from which it shall be computed shall be in the court's discretion."

It is acknowledged that § 5001(a) applies to interest payable on judgments. Bloor's principal argument is that the determination of the principal amount due on a defaulted mortgage such as Connecticut General's in the case at hand is the functional equivalent of a judgment, and that § 5001(a) should accordingly apply. In support of his thesis and in criticism of Judge Schwartzberg's characterization of the case as one of "involuntary forbearance" by the mortgagee (Connecticut General), Bloor

cites in particular *National Bank v. Mechanics National Bank*, 94 U.S. 437, 24 L.Ed. 176 (1876), and *In re John Osborn's Sons & Co.*, 177 F. 184 (2d Cir. 1910), for the proposition that ". . . the United States Supreme Court and the Second Circuit have characterized allowed claims in bankruptcy as judgments, not as loans or forbearances." [2] This analysis of *National Bank* and *Osborn's* is inaccurate. Neither case dealt with the distinction, critical to this case, of judgments on one hand and loans or forbearances on the other. Indeed, neither the term "loans" nor "forbearances" is to be found in either opinion. The sum of the determination in *National Bank* (to which *Osborn's* adds nothing) is that claims of depositors at the time of the suspension of a national bank are, when proved to the satisfaction of the Comptroller of the Currency, placed upon the same footing as if they were reduced to judgments. This holding does not illuminate the issue at hand.

Bloor also relies heavily on *Jamaica Savings Bank v. Toomey*, 77 Misc.2d 887, 355 N.Y.S.2d 268 (Sup.Ct., Queens Cty.1974), unanimously affirmed without opinion 46 A.D.2d 847, 363 N.Y.S.2d 313 (2d Dept. 1974), which held *inter alia* that "the rate of interest following default of the mortgage obligation is to be computed at the rate then prescribed by statute . . . The statutory rate of 6% set by CPLR § 5004 is therefore the rate to be applied in computing interest due plaintiff on the bonds, mortgages and extension agreement." *Id.* at 355 N.Y.S.2d 268, 271. (citations omitted) Bloor places particular reliance on *Jamaica Savings* because it is the only authority emanating from the Appellate Division, Second Department, whose rulings control in Westchester County where the proceedings here originate. While there is no doubt that *Jamaica Savings* is helpful to Bloor, it does not carry the day for him. This is so not only because the trial court's opinion gives little guidance as to why it

---

1. To the extent that the rate of interest payable to Connecticut General from the debtor's estate is reduced, additional funds will be available for the claim of Bloor.

2. Appellant's Memorandum, page 23.

concludes that § 5004 is applicable to payments of interest on foreclosed mortgages but because the statement quoted above is followed by this qualifying observation:

> "Moreover, since this is an action of an equitable nature (*Copp v. Sands Point Marina*, 17 N.Y.2d 291, 270 N.Y.S.2d 599, 217 N.E.2d 654 . . .), the recovery of interest is within the court's discretion. (CPLR § 5001[a])." *Id.* at 355 N.Y.S.2d 268, 271. (citations omitted)

As pointed out in appellee's memorandum (page 15), the property in *Jamaica Savings* was a residential mortgage in which the mortgagors had appeared pro se, and it is quite likely that in the circumstances the trial court exercised its equitable discretion to fix the rate of interest at 6%. See *Bosco v. Alicino*, 37 A.D.2d 552, 322 N.Y.S.2d 414 (1st Dept. 1971). However, the Appellate Division's affirmance without opinion of the lower court's holding in *Jamaica Savings*, which rested on two theories of decision, leaves us without guidance as to whether the rate of interest is to be fixed under CPLR § 5004 or in the court's discretion.

We believe the sounder argument to be that on the foreclosure of a defaulted mortgage, which is an equitable proceeding (*Seamen's Bank for Savings v. Smadbeck*, 293 N.Y. 91, 56 N.E.2d 46), the rate is to be set in the court's discretion. We believe, also, that, considering the evidence before Judge Schwartzberg as to the rates of interest payable on mortgages such as the Hartsdale—Connecticut General mortgage, it was no abuse of discretion on Judge Schwartzberg's part to award interests at the rate of 8½% per annum in today's mortgage market.

Moreover, a number of New York cases support Judge Schwartzberg's decision. See, for example, *Dime Savings Bank of Williamsburgh v. Mawash Realty Corp.*, New York Law Journal, October 28, 1975, page 5 (Supreme Court, New York County). We agree with the observation in *Dime Savings* that:

> ". . . if the interest rate is not revised, [after expiration of the due date, as is the case here] any corporate mortgagor

will be given the incentive to allow an obligation to mature without making repayment"

with adverse effect on the willingness of lenders to fund the mortgage market.

We have considered Bloor's further arguments including his claim that equitable considerations require that the rate of interest be set below 6%, and find them without merit.

The decision and recommendations of Bankruptcy Judge Schwartzberg dated June 16, 1977 appealed from are affirmed.